IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| Plaintiff, | § |
| | § Criminal No. 3:08-CR-267-D (05) |
| VS. | § |
| | § |
| | § |
| SERGIO DIAZ, | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

Defendant Sergio Diaz ("Diaz") moves for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and to suppress evidence gathered as a result of two court-ordered wiretaps. For the reasons that follow, the court denies the motion.

I

A

In June 2007 the U.S. Drug Enforcement Administration ("DEA") began investigating the Chavarria drug trafficking organization ("DTO"), an ongoing criminal enterprise responsible for the importation and distribution of multi-kilogram quantities of cocaine and marihuana and the laundering of drug proceeds. During the course of that investigation, the DEA gathered intelligence regarding a major DTO that was controlling at least four separate, but linked, drug smuggling/distribution cells based in Dallas, Texas. Codefendant Hector Omero Rodriguez ("Rodriguez") was

identified as the leader of one of the four cells, and in November 2007 the DEA began investigating the cocaine and marihuana trafficking activities of the Rodriguez DTO.

The DEA used numerous investigative techniques during the Rodriguez investigation, including the following wiretaps authorized under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III"): (1) order granting an April 2, 2008 application for the interception of wire communications to and from cellular telephone number xxx.xxx.6863[1] (target telephone #1, used by Rodriguez) for a period of 30 days; (2) order granting an April 24, 2008 application for the interception of wire communications to and from cellular telephone numbers xxx.xxx.4070 (target telephone #2, used by Rodriguez) and xxx.xxx.8812 (target telephone #3, used by Rodriguez) for a period of 30 days; and (3) order granting a May 27, 2008 application for the interception of wire communications to and from cellular telephone numbers xxx.xxx.1138 (target telephone #4, used by Rodriguez), xxx.xxx.1188 (target telephone #5, used by Rodriguez), and xxx.xxx.9940 (target telephone #6, used by Lazaro Rodriguez ("Lazaro")) for a period of 30 days.

Diaz was not identified—either as the subject of the investigation or as a potential interceptee—in the government's

---

[1] Because the court can adequately explain its decision without disclosing the complete telephone numbers, it will truncate the numbers.

affidavit for the interception of target telephone #1. During the course of intercepting target telephone #1, however, the DEA identified Diaz as an individual who communicated with Rodriguez over target telephone #1 to conduct drug-related business. When Rodriguez ceased using target telephone #1 shortly after the court-authorized interception, DEA agents identified target telephones #2 and #3 as new telephones used by Rodriguez to conduct his drug-trafficking business. In its application for authorization to intercept the new telephones, the DEA identified Diaz and other individuals who had been intercepted during the course of intercepting target telephone #1 as coconspirators and interceptees. Because of Diaz's drug-related communications with target telephone #1, he was also named as a coconspirator and interceptee in the court-authorized wire intercepts for target telephones #4, #5, and #6. The DEA never sought Title III authorization, however, of Diaz's telephone.

B

Diaz argues that in the April 24, 2008 and May 27, 2008 affidavits the government did not meet the statutory and case law standards for probable cause and necessity[2] in support of its

---

[2]Although Diaz asserts in his brief that the government did not meet the "necessity" standards prescribed by statute and case law, *see* D. Br. 4, he does not specifically address the issue of "necessity" elsewhere in his brief, at least not in the sense that the "necessity" requirement of 18 U.S.C. § 2518(1)(c) is normally understood. Section 2518(1)(c) provides that "Each application shall include . . . a full and complete statement as to whether or

applications to intercept his conversations. Specifically, Diaz highlights the following language in the pen register section of the April 24 affidavit:

> [xxx.xxx.]4070 (target telephone #2) dialed or received seven (7) calls from [xxx.xxx.]6155 with the last telephone call occurring on April 10, 2008. This telephone is subscribed to Mario Lopez, 1409 N. Zang Blvd., Dallas, Texas, and utilized by Sergio Diaz. I am aware from information obtained from DEA agents in Houston, Texas that Diaz is in charge of a distribution cell in Dallas, Texas. This investigation has previously determined that the Hector Rodriguez DTO uses Diaz Diesel Repair, a business owned by Sergio Diaz and his father, to unload cocaine shipments. On April 4, 2008 at approximately 7:28 p.m., an outgoing call between Sergio Diaz at [xxx.xxx.]6155 and Hector Rodriguez was intercepted on target telephone #1.

---

not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]"

> Title III of the Omnibus Crime Control and Safe Streets Act of 1968 empowers a federal judge to authorize wire, oral, or electronic communication interceptions upon compliance by law enforcement agents with statutory prerequisites. *See generally* 18 U.S.C. §§ 2510-2521. Recognizing the highly intrusive nature of a wiretap, Congress added section 2518(1)(c), a statutory "necessity requirement" designed to insure that "wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose the crime."

*United States v. Guerra-Marez*, 928 F.2d 665, 669-70 (5th Cir. 1991) (footnotes and some citations omitted), *aff'g in relevant part United States v. Paredes-Moya*, 722 F. Supp. 1402 (N.D. Tex. 1989) (Fitzwater, J.). Because Diaz does not address the "necessity" requirement as it is normally understood, the court need not do so.

> During this recorded call, Diaz and Hector
> Rodriguez discussed the repayment of money
> owed to Diaz. Rodriguez stated that he,
> Rodriguez, wanted to give Diaz what he owed
> him. Diaz replied that he could send his
> (Diaz's) brother. Rodriguez then asked if
> Diaz wanted Rodriguez to give the brother the
> money. Diaz replied "yes." It is believed
> that Diaz may be an alternate source of supply
> for Rodriguez and that the money being paid is
> for a previous drug transaction.

Wire No. 08-010, Davis Apr. 24, 2008 Aff. 26-27. Diaz maintains that the April 24 affidavit deliberately and falsely suggests that there was specific authorization to intercept calls to target telephone #2 prior to April 24, 2008, and that the telephone call and the statements attributed to Diaz in the affidavit do not amount to probable cause.

Regarding the May 27 affidavit, Diaz points to the following language in the pen register section:

> [xxx.xxx.]9940 (target telephone #6) dialed or
> received 23 calls from [xxx.xxx.]6155 with the
> last telephone call occurring on May 10, 2008.
> This telephone is subscribed to Mario Lopez,
> 1409 N. Zang Blvd., Dallas, Texas, and
> utilized by Sergio Diaz. I am aware from
> information obtained from DEA agents in
> Houston, Texas that Diaz is in charge of a
> distribution cell in Dallas, Texas. This
> investigation has previously determined that
> the Hector Rodriguez DTO uses Diaz Diesel
> Repair, a business owned by Sergio Diaz and
> his father, to unload cocaine shipments. On
> April 4, 2008 at approximately 7:28 p.m., an
> outgoing call between Sergio Diaz at
> [xxx.xxx.]6155 and Hector Rodriguez was
> intercepted on target telephone #1. During
> this recorded call, Diaz and Hector Rodriguez
> discussed the repayment of money owed to Diaz.
> Hector Rodriguez stated that he, Hector

> Rodriguez, wanted to give Diaz what he owed him. Diaz replied that he could send his (Diaz's) brother. Hector Rodriguez then asked if Diaz wanted Hector Rodriguez to give the brother the money. Diaz replied "yes." It is believed that Diaz may be an alternate source of supply for Hector Rodriguez and that the money being paid is for a previous drug transaction. This telephone is subscribed to and being used by Omar Hernandez at 4818 March Avenue, Dallas, Texas.

Wire No. 08-015, Sosa May 27, 2008 Aff. 25-26. Diaz challenges the May 27, 2008 affidavit, arguing that the telephone call and statements attributed to Diaz in that affidavit never occurred, and that the affiant, by including those statements in the affidavit, either deliberately or recklessly misled the issuing judge in order to secure Title III interception authorization.

II

In *Franks v. Delaware* the Supreme Court determined that criminal defendants have a limited right under the Fourth and Fourteenth Amendments to challenge the truthfulness of factual statements made in affidavits supporting search warrants, subsequent to the *ex parte* issuance of the warrant. *Franks,* 438 U.S. at 155-56. *Franks* applies to wiretaps authorized under Title III. *United States v. Paredes-Moya*, 722 F. Supp. 1402, 1413 (N.D. Tex. 1989) (Fitzwater, J.), *aff'd in relevant part*, *United States v. Guerra-Marez*, 928 F.2d 665, 671 (5th Cir. 1991) ("The district court properly denied [defendant's] motion to suppress."). The *Franks* rule is of "limited scope, both in regard to when exclusion

of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Franks,* 438 U.S. at 167. "In *Franks* the Supreme Court held that, under limited circumstances, a defendant is entitled to an evidentiary hearing for the purpose of establishing that a search warrant should be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Paredes-Moya*, 722 F. Supp. at 1413 (citing *Franks*, 438 U.S. at 155-56).

Under *Franks* "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant." *Franks,* 438 U.S. at 171. To be entitled to an evidentiary hearing on suppression, a defendant attacking the validity of an affidavit supporting a search warrant must make a "substantial preliminary showing" that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. *Id*. at 155-56, 171; *see also United States v. Dickey,* 102 F.3d 157, 161-62 (5th Cir. 1996); *Paredes-Moya*, 722 F. Supp. at 1413. The Court explained in some detail what it meant by a "substantial preliminary showing":

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. at 171-72.

The "substantial preliminary showing" requirement is not lightly met. *See United States v. Hiveley,* 61 F.3d 1358, 1360 (8th Cir. 1995); *United States v. Tibolt,* 72 F.3d 965, 973 n.7 (1st Cir. 1995); *United States v. Wajda,* 810 F.2d 754, 759 (8th Cir. 1987). Furthermore, even if the defendant makes the requisite substantial preliminary showing for an evidentiary hearing, suppression is still not mandated unless the defendant establishes at the hearing, by a preponderance of evidence, that the misstatements in question were made intentionally or with reckless disregard for the truth and that, with the false statements omitted, probable cause was

lacking. *Franks,* 438 U.S. at 156; *see also Paredes-Moya*, 722 F. Supp. at 1413.

III

A

Diaz's complaint about the April 24 affidavit——that the affidavit deliberately and falsely suggests that there was court authorization to intercept calls to target telephone #2 *prior to* April 24, 2008——is based on a misunderstanding of the affidavit. Diaz reads the affidavit to reveal that the government was intercepting calls (without court authorization) between target telephone #2 and the telephone Diaz was using (xxx.xxx.6155) before April 24, 2008. But this is not what the affidavit says or implies when this portion is read in its proper context. The language Diaz cites comes from the *pen register* section of the affidavit. It discloses call frequency data between two telephones (telephones being used by Diaz and Rodriguez) derived from a court-authorized pen register. *See* Wire No. 08-010, Davis Apr. 24, 2008 Aff. 26 ("[xxx.xxx.]4070 (target telephone #2) dialed or received seven (7) calls from [xxx.xxx.]6155 [Diaz's telephone] with the last telephone call occurring on April 10, 2008."). The only call for which intercepted content is disclosed is an April 4, 2008 call intercepted over *target telephone #1*, and the interception of that call was authorized by the court beforehand, on April 2. *See id.* at 27 ("On April 4, 2008 at approximately 7:28 p.m., an outgoing

call between Sergio Diaz at [xxx.xxx.]6155 and Hector Rodriguez was *intercepted on target telephone #1.*" (emphasis added)). The affiant included the April 4 telephone call in the April 24 affidavit to support the inference that target telephone #2 (for which only pen register data were then available) was being contacted by Diaz's telephone for drug-related business.

B

Furthermore, to the extent Diaz suggests in his argument that the government was obligated to name him as a coconspirator or interceptee in the affidavit supporting the April 2, 2008 Title III application for target telephone #1 in order to lawfully intercept the April 4 telephone call between Diaz and Rodriguez, his contention lacks force. Neither the Fourth Amendment nor Title III requires that the government name all possible interceptees in a wiretap application.

> The Fourth Amendment requires specification of the "the place to be searched, and the persons or things to be seized." In the wiretap context, those requirements are satisfied by identification of the telephone line to be tapped and the particular conversations to be seized. It is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named.

*United States v. Donovan*, 429 U.S. 413, 427 n.15 (1977) (citing *United States v. Kahn*, 415 U.S. 143, 155 n.15 (1974)). Although 18 U.S.C. § 2581(1)(b)(iv) provides that an application must include "the identity of the person, if known, committing the offense and

whose communications are to be intercepted," "the Government is not required to identify an individual in the application unless it has probable cause to believe (i) that the individual is engaged in the criminal activity under investigation and (ii) that the individual's conversations will be intercepted over the target telephone." *Donovan*, 429 U.S. at 423; *see United States v. Hyde*, 574 F.2d 856, 862 (5th Cir. 1978) ("[W]e have never required that a defendant be named in a wiretap application or accused of using the suspected telephone before evidence obtained by wiretap can be used against him.").

After the government intercepted Diaz using his telephone to communicate with Rodriguez on target telephone #1, it named Diaz in the subsequent wiretap applications, as required. *See* 18 U.S.C. § 2518(1)(b)(iv) (prescribing that each application include "the identity of the person, if known, committing the offense and whose communications are to be intercepted"). Diaz does not allege that, at the time of the target telephone #1 application, the government had probable cause to believe that he was engaging in drug trafficking and that he would be contacting target telephone #1 to facilitate his activities. And even if the government had probable cause to name Diaz in the target telephone #1 application, its failure to do so would not require suppression of intercepted conversations involving Diaz where the judge who authorized the wiretap determined that there was probable cause to believe that

Rodriguez was engaged in drug trafficking, that particular communications concerning the offense would be obtained through interception, and that target telephone #1 was being used in connection with the drug trafficking. *See Donovan*, 429 U.S. at 435, 439 (holding that although the government was required to identify respondents in wiretap application, its failure to do so did not warrant suppression because "the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization").

It is clear that the April 24 affidavit does not falsely represent that there was authorization to intercept calls to target telephone #2 prior to April 24, 2008. Because Diaz has failed to make a substantial preliminary showing that this false statement was made in the April 24 affidavit—let alone made knowingly or recklessly—Diaz has failed to meet the first prong set forth in the *Franks* test, and no hearing need be conducted before denying his motion.

C

Diaz also alleges that the telephone call and the statements attributed to Diaz in the April 24 affidavit do not rise to the level of probable cause. The court disagrees. In issuing the wiretap orders regarding target telephone #2 and target telephone #6 (the subject of the May 27, 2008 order), the relevant probable

cause inquiry is not whether *Diaz* was engaged in criminal activity but whether *an individual* was engaged in criminal activity and whether the conversations sought to be monitored over the target telephones were likely to contain evidence of a crime.

> The [wiretap] statute provides that the issuing judge may approve an intercept application if he determines that normal investigative techniques have failed or are unlikely to succeed and there is probable cause to believe that: (i) *an individual* is engaged in criminal activity; (ii) particular communications concerning the offense will be obtained through interception; and (iii) the target facilities are being used in connection with the specified criminal activity.

*Donovan*, 429 U.S. at 435 (emphasis added) (citing 18 U.S.C. §§ 2518(3)(a)-(d)); *see also id.* at 427 n.15 (noting that constitutional requirements are satisfied by identification of telephone line to be tapped and particular conversations to be seized; the naming of all those likely to be overheard engaging in incriminating conversations is not constitutionally required). Consequently, so long as the issuing judge determined that there was probable cause to believe that Rodriguez and/or Lazaro (or another individual) was engaged in drug trafficking and that the conversations sought to be monitored over target telephones #2 and #6 were likely to contain evidence of drug trafficking—issues that Diaz does not challenge—the interception of those telephones was properly authorized, and Diaz's calls over those telephones could be monitored so long as the communications were likely to contain

evidence of the drug-trafficking activity being investigated, as was the case with the April 4 conversation intercepted over target telephone #1.

Furthermore, even though probable cause as to Diaz was not a prerequisite to the proper interception of Diaz's calls over the target telephones, the court finds that, contrary to Diaz's contention, there was sufficient probable cause to believe that Diaz was a coconspirator with Rodriguez in the drug distribution business based on the April 4 telephone call attributed to Diaz in the April 24 affidavit. Probable cause exists "where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *Berger v. New York,* 388 U.S. 41, 55 (1967). Probable cause is evaluated utilizing a totality of the circumstances test. *Dickey,* 102 F.3d at 162. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The judge is permitted to draw reasonable inferences, and his determinations are to be paid "great deference" by the reviewing courts. *Id.* at 236; *United States v. Settegast,* 755 F.2d 1117, 1121 (5th Cir. 1985).

In the April 4 telephone call (outlined in the April 24 and May 27 affidavits), Diaz and Rodriguez discussed the repayment of money owed to Diaz, and arrangements were made for Diaz's brother to pick up the money from Rodriguez. At the time of this telephone call, the DEA believed, based on its investigation, that Rodriguez was the leader of a major drug-trafficking organization and that this organization used Diaz Diesel Repair, a business owned by Diaz and his father, to unload cocaine shipments. Moreover, DEA agents in Houston, Texas had informed the affiant that Diaz was in charge of a distribution cell in Dallas. Based on this information and on the affiant's own personal experience investigating drug organizations, including a general understanding that currency exchanges are the lifeblood of a drug business, there was sufficient probable cause to believe that the April 4 conversation between Diaz and Rodriguez regarding the payment of money owed to Diaz was related to the Rodriguez DTO.

IV

Diaz challenges the May 27 affidavit by arguing that the telephone call and statements attributed to Diaz in that affidavit never occurred. He points to the fact that the April 24 affidavit and the May 27 affidavit contain the same conversation, arguing that "it is an impossibility that the exact same language reported in the April 24, 2008 affidavit to target telephone #2, can be made a month later on May 27, 2008 to target telephone #6." D. Br. 8;

*see also id.* at 9 ("it is impossible for the same exact conversation to be had on three different phones, 30 days apart."). Diaz's challenge to the May 27 affidavit, therefore, is based on a misunderstanding of both the April 24 and the May 27 affidavits. Contrary to Diaz's contention, the April 24 affidavit does not represent that a conversation between Diaz and Rodriguez regarding the payment of money owed to Diaz occurred on April 24, 2008, and the May 27 affidavit likewise does not represent that the same conversation occurred on May 27, 2008. Instead, both affidavits clearly refer to a single conversation that occurred on April 4, 2008. *See* Wire No. 08-010, Davis Apr. 24, 2008 Aff. 27, and Wire No. 08-015, Sosa May 27, 2008 Aff. 25 ("*On April 4, 2008* at approximately 7:28 p.m., an outgoing call between Sergio Diaz at [xxx.xxx.6155] and Hector Rodriguez was intercepted on target telephone #1. *During this recorded call*, Diaz and Hector Rodriguez discussed the repayment of money owed to Diaz.") (emphasis added). The DEA agent included the April 4 telephone call in the April 24 affidavit to support the inference that target telephone #2—which pen register records showed had dialed or received seven calls from Diaz's telephone—was being contacted by Diaz's telephone for drug-related business. Similarly, the DEA agent included the April 4 telephone call in the May 27 affidavit to support the inference that target telephone #6—which pen register records showed had dialed or received 23 calls from Diaz's telephone—was being

contacted by Diaz's telephone for drug-related business. Therefore, the fact that the April 24 affidavit and the May 27 affidavit contain the same conversation is not proof that the conversation outlined in the May 27 affidavit never occurred. Indeed, Diaz received a recording of the conversation outlined in the May 27 affidavit (and the April 24 affidavit) on October 23, 2008.

Diaz also points to the last sentence in the May 27 affidavit's pen register section, *see* Wire No. 08-015, Sosa May 27, 2008 Aff. 26 ("This telephone is subscribed to and being used by Omar Hernandez at 4818 March Avenue, Dallas, Texas."), as further evidence that the conversation included in that affidavit never occurred. According to Diaz, the last sentence is the only difference between the pen register sections of the May 27 and April 24 affidavits.[3] This argument, however, collapses into Diaz's previous argument already rejected by the court—namely, that the conversation outlined in the May 27 affidavit could not have occurred because it is the same conversation outlined in the April 24 affidavit. The May 27 affidavit and the April 24

---

[3]Contrary to Diaz's contention, the last sentence in the May 27 affidavit's pen register section is not the only difference between the pen register sections of the May 27 and April 24 affidavits. Both affidavits state how many times the target telephone dialed or received calls from Diaz's telephone (seven times for target telephone #2, and twenty-three times for telephone #6), providing a separate factual basis for targeting each telephone.

affidavit do refer to—and are intended to refer to—the same April 4 conversation, but the affidavits never make the improbable assertion that exactly the same conversation occurred on multiple occasions.

The government concedes that the inclusion of the last sentence in the May 27 affidavit's pen register section—the only difference between the May 27 affidavit's recitation of the April 4 conversation and the April 24's recitation of the April 4 conversation—was a mistake.  Although it was an error to include that last sentence, Diaz has failed to make a preliminary showing that the error was intentionally or recklessly made or that the wiretap order would not have issued but for the error.  Indeed, the inclusion of the last sentence, *see id.* ("This telephone is subscribed to and being used by Omar Hernandez . . .") is an obvious mistake, contradictory on its face to the user and subscriber information stated earlier in that same paragraph that, considering the participants in the April 4 conversation, is a much more convincing recital of the information, *see id.* at 25 ("This telephone is subscribed to Mario Lopez . . ., and utilized by Sergio Diaz.").  The obviousness of the mistake indicates both that the error was negligently made and that it could not have affected the court's probable cause determination.  Accordingly, with respect to the May 27 affidavit, Diaz fails to meet both prongs of

the *Franks* test.[4]

V

In the final pages of his brief, Diaz challenges the veracity of both the April 24 affidavit and the May 27 affidavit by contending that both affidavits falsely state that he is a distribution cell for drug activity in Dallas, that the April 4 conversation between him and Rodriguez was a drug transaction made in furtherance of a drug-trafficking crime, and that he is an alternative source of supply for Rodriguez. Because Diaz offers no proof, however, to support these conclusory assertions of falsity,[5] Diaz has not made a substantial preliminary showing to mandate a *Franks* hearing on these alleged misrepresentations. *See Franks*, 438 U.S. at 171-72.

---

[4]Diaz also argues that the information in the May 27 affidavit does not rise to the level required to find probable cause. For the reasons set out *supra* at § III(C), the court rejects this argument. He also contends that the affidavit fails to comply with 18 U.S.C. § 2518(1)(f). *See* D. Br. 3-4. Section 2518(1)(f) requires that "where the application is for the extension of an order, [the application must include] a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results." The court rejects this argument as well, concluding that the affidavit satisfies § 2518(1)(f).

[5]Indeed, Diaz merely repeats his identification of the false portions of the affidavits in his statement of supporting reasons. *Compare* D. Br. 8-9 ("False Portions of the Warrant: . . . Diaz maintains that Diaz is not a distribution cell for any drug activity in Dallas, Texas . . . . That Diaz is not an alternate source of supply for Rodriguez.") *with id.* at 9 ("Statement of supporting reasons: . . . Diaz is not a distribution cell for any drug activity in Dallas, Texas and is not an alternate source of su[pply] for Rodriguez.").

* * *

Accordingly, Diaz's January 11, 2009 motion to suppress and for a *Franks* hearing is denied.

**SO ORDERED.**

February 11, 2009.

                                                SIDNEY A. FITZWATER
                                                CHIEF JUDGE