**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CRIMINAL NO. 3:08-CR-267-D(05) |
| § | |
| SERGIO DIAZ, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's *Order of Reference*, filed August 5, 2009, all pending issues concerning the determination of the property to be forfeited by this defendant to the Government under count three of the indictment have been referred for determination and/or recommendation.[1] Before the Court are *Government's Motion and Brief for Recommendation of Forfeiture*, filed August 21, 2009 (doc. 455), and *Defendant's Motion and Brief for Denial of Forfeiture*, filed September 10, 2009 (doc. 469). Based on the relevant filings, evidence, and applicable law, the Court recommends that the Government's motion be **GRANTED**, and that the defendant's motion be **DENIED**.

**I. BACKGROUND**

**A.   Procedural History**

By indictment filed on September 3, 2008, defendant Sergio Diaz ("Diaz") and twenty other individuals were charged with conspiring to possess with intent to distribute and to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 (Count 1), and to launder the proceeds of the distribution of cocaine in violation of 18 U.S.C. § 1956 (Count 2). (*See* Indictment, doc. 1.)

---

[1] The Court conducted a status conference concerning the pending issues on August 11, 2009, and all parties appeared through counsel. The parties agreed and stipulated on the record that no hearing concerning the merits should be conducted as provided by Fed. R. Crim. P. 32.2(b)(1) and requested that the Court determine the issues on the basis of stipulated facts and briefs.

The indictment also contained a forfeiture allegation pursuant to 21 U.S.C. § 853(a) and 18 U.S.C. § 982(a)(1) seeking forfeiture of any property constituting or derived from proceeds obtained through the distribution of cocaine as well as any property used or intended to be used to facilitate the commission of the offense.  *Id.*  On November 8, 2008, the government filed a Bill of Particulars to give notice that it was seeking forfeiture of four tracts of land owned by Diaz located at 3730, 3742, 3802 and 3806 Cotton, Dallas, Dallas County, Texas.  (*See* Bill, doc. 189.)

On December 12, 2008, the defense unilaterally filed a factual resume in which Diaz agreed and stipulated that he participated in the conspiracy and "that he allowed two parcels of his property to be used to stage vehicles that were being used to move cocaine."  (*See* Factual Resume, doc. 215.) Diaz entered a plea of guilty to the trafficking conspiracy in Count 1 without a plea agreement on April 3, 2009.  The government now seeks forfeiture of the property used to facilitate the offense to which Diaz pled.

**B.      Stipulated and/or Agreed Facts**

In their motions, the parties have stipulated to the following facts:

a. Diaz owns the four parcels of land at issue in this case - 3730 Cotton, 3742 Cotton, 3802 Cotton and 3806 Cotton. He purchased the four parcels in October, 2007 from Ocie L. Fisher for $60,000.00.  (Government's App. 14-20).  Two of these parcels are mentioned in Diaz's Factual Resume.  (Government's App. 13).

b. A Warranty Deed memorialized the transfer of the four parcels from Fisher to Diaz, listing the four addresses as Tracts One through Four.  (Government's App. 14-15).

c. Tract one is 3730 Cotton, Tract two is 3806 Cotton, Tract Three is 3802 Cotton, and Tract Four is 3742 Cotton.  (Government's App.15,21-22.)

d. The four Cotton parcels are geographically contiguous.  (Government's App. 21,22).

e. They are bordered by Cotton Lane to [the] west and Interstate 45 to the east, and all four tracts are trapezoidal in shape.  *Id.*

> f. Tract one (3730), the northernmost parcel, has approximate dimensions of 149 feet by 105 feet by 149 feet by 121 feet. (Government's App. 22).
>
> g. Tract Four (3742) has approximate dimensions of 149 feet by 88 feet by 149 feet by 105 feet. *Id.*
>
> h. Tract Three (3802) has approximate dimensions of 50 feet by 81 feet by 50 feet by 88 feet. *Id.* Tract Two (3806), the southernmost parcel, has approximate dimensions of 50 feet by 78 feet by 50 feet by 81 feet. *Id.*

(*See* Govt Mot. at 3-4, 11; Def. Mot. at 5-6, 10-11.)

Although the following facts are not listed by the parties in their stipulated facts, the facts are recited virtually identically in both parties' briefs and therefore appear to be agreed:

> [i.] In photographs, the four Cotton parcels appear as a single, undivided piece of real property - no fences or walls divide them from each other. (Government's App. 24, 26-28).
>
> [j.] Various vehicles have been and are parked on parcels. (Government's App. 23-25, 27-28).
>
> [k.] Various storage containers have been and are placed on the property. (Government's App. 28-29).
>
> [l.] The gated entrance to the property stands on Tract One (3730 Cotton), but the sign near it states "3802 Cotton." (Government App. 23, 25-27).
>
> [m.] At the southernmost end of the parcels stand two structures - a metal frame of a building and a roofed carport. (Government's App. 29-30).

(*See* Govt Mot. at 4, ¶ 5; Def. Mot. at 6-7.)

**C.**     **Diaz's Proffered Facts**

In addition to the stipulated and/or agreed facts and evidence, Diaz has also proffered evidence that shows as follows:

> 1. The official website of Dallas County, Texas, shows a market value of $17,320 for 3742 Cotton for the 2008 tax year, and a current tax levy of $434.34. (Def. Exh. 2).
>
> 2. The official website of Dallas County, Texas, shows a market value of $25,280 for 3730 Cotton for the 2008 tax year, and a current tax levy of $633.95. (Def. Exh. 3).

3. The official website of Dallas County, Texas, shows a market value of $20,180 for 3802 Cotton for the 2008 tax year, and a current tax levy of $506.06. (Def. Exh. 4).

4. The official website of Dallas County, Texas, shows a market value of $5,950 for 3806 Cotton for the 2008 tax year, and a current tax levy of $149.20. (Def. Exh. 5).

5. According to the official website of Dallas County, Texas, the total market value for the four Cotton parcels in the 2008 tax year is $68,730. (Def. Exhs. 2-5).

6. Site plans dated February 1, 2008 show plans for a proposed building on 3802 Cotton. (Def. Exh. 1.)

7. The sliding gate on 3730 Cotton currently provides the only access from the street to all four parcels. (Def. Exhs. 1, 8; Government's App. 22).

## II. ANALYSIS

The Government seeks forfeiture of the four Cotton parcels pursuant to 21 U.S.C. § 853(a) as property used to facilitate commission of a drug offense. (Govt. Mot. at 6.) Diaz contends that only two those lots which were actually used to facilitate the offense are subject to forfeiture, forfeiture of all four lots would constitute excessive punishment, and his wife has an innocent owner community property interest in the four lots. (Def. Mot. at 8-10.)

**A.** **Severability**

The Government contends that the four parcels Cotton parcels should be considered as a single property because they are contiguous and were purchased in a single transaction through a single warranty deed. (Govt. Mot. at 6.) Diaz responds that the four parcels should not be considered as a single property because they are four separate lots, were taxed separately, and were purchased for distinct and separate uses. (Def. Mot. at 7.)

Section 853(a)(2) provides that any person convicted of a drug offense punishable by imprisonment for more than one year shall forfeit to the Government "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of," the

4

offense. 21 U.S.C. § 853(a)(2). Use of property to facilitate an offense has been defined as "making the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Juluke*, 426 F.3d 323, 326-7 (5th Cir. 2005), citing *United States v. Premises Known as 3639-2nd St., N.E., Minneapolis, Minn.*, 869 F.2d 1093, 1096 (8th Cir.1989). The Government must establish the requisite nexus between the property and the offense by a preponderance of the evidence.[2] *United States v. Gasanova*, 332 F.3d 297 300-01 (5th Cir. 2003).

As noted, § 853(a) expressly provides that use of *any part* of a piece of property to commit or to facilitate a drug offense requires the district court to forfeit the whole property. The statute, however, does not clearly define what constitutes one piece of property. *United States v. Bieri*, 21 F.3d 819, 823 (8th Cir. 1994). The Fifth Circuit has not specifically addressed this issue.[3] In the most prominent case on the issue, the Eighth Circuit has taken the position that property subject to forfeiture under § 853(a) is defined by "the instruments and documents that created the defendant's interest in the property." *Bieri*, 21 F.3d at 824; *see also United States v. Reynolds*, 856 F.2d 675, 676-77 (4th Cir. 1988); *United States v. Smith*, 966 F.2d 1045, 1051 (6th Cir. 1992). *Bieri* holds that where a defendant purchases a number of parcels as a single unit in a single instrument, and the tracts are contiguous, § 853(a) requires the district court to forfeit the whole unit. *See Bieri*, 21 F.3d at 824. Conversely, where a defendant obtains different tracts of land on different dates through separate

---

[2]The Government points out that Diaz has agreed and stipulated that he participated in the conspiracy and "that he allowed two parcels of his property to be used to stage vehicles that were being used to move cocaine." (See Factual Resume, doc. 215.) Thus, the Government has established the requisite nexus between the property and the offense by a preponderance of the evidence. The issue to be resolved here is whether section 853(a) requires forfeiture of all four parcels of land owned by Diaz or only the two parcels used to facilitate the commission of the drug offense.

[3]The Fifth Circuit has noted other circuits' recognition that a single land area could contain several contiguous tracts and the importance of the definition of a "tract" of land for purposes of forfeiture in *United States v. Sonny Mitchell Center*, 934 F.2d 77 (5th Cir. 1991). The court determined, however, that it did not need to decide whether the property at issue contained multiple tracts in order to determine whether the jury instruction that was the subject of appeal was proper. *Id.* at 78-79.

5

conveyances and instruments, the district court should not forfeit all the tracts. *Smith*, 966 F.2d 1054-55. Therefore, the owner's subjective characterization of what constitutes one piece of property is irrelevant. *See Bieri*, 21 F.3d at 824.[4]

Application of the *Bieri* approach to the undisputed facts in this case results in a finding that the four Cotton parcels owned by Diaz constitute a single piece of property under § 853(a). The transfer of the parcels to Diaz constituted a single transaction: Diaz purchased the four geographically contiguous tracts as a whole from a single buyer, at a single time, and a single warranty deed was used to memorialize their transfer. (Government's App. 14-22). Additionally, the Court notes that in photographs, the four Cotton parcels appear as a single, undivided piece of real property unseparated by walls or fences. (Government's App. 24, 26-28). The only gated entrance to the property stands on Tract One (3730 Cotton), but the sign near it states "3802 Cotton." (Government App. 23, 25-27). This sliding gate provides the only current access from the street to all four tracts. (Def. Exhs. 1, 8). Various vehicles are parked on the parcels and various storage containers have been placed on the property, and the use appears commercial in nature. (Government's App. 23-25, 27-29). Based on these facts, the Court finds that the four Cotton parcels owned by Diaz constitute a single piece of property subject to forfeiture under § 853(a). *See Bieri*, 21 F.3d at 824.

---

[4]Other circuits have looked to *Bieri* in determining what constitutes a single piece of property under the civil forfeiture statute, 21 U.S.C. § 881(a)(7), which is almost identical in wording to § 853(a). The Second Circuit has taken the approach that the civil forfeiture statute requires separate parcels to be treated separately for forfeiture purposes unless it is unreasonable or physically impossible to do so. *SeeUnited States v. Two Parcels of Prop. Located at 19 and 25 Castle St.*, 31 F.3d 35, 41 (2d Cir. 1994). It found that unreasonableness requires consideration of factors such as "zoning and planning requirements, how long ago the property was last held in separate ownership, the nature of the property, and the manner in which the property is used." *Id.* It would be unreasonable or physically impossible to treat the property separately where, for instance, a building straddles both parcels, *id.,* or where severing the two parcels would leave one parcel landlocked, *United States v. Real prop. located in El Dorado County*, 59 F.3d 974, 986 n. 15 (9th Cir. 1995). Noting that application of the Eighth Circuit's approach and the Second Circuit's approach to the same set of facts would result in different outcomes, the Eleventh Circuit opted for a middle ground requiring a determination of the definition of property on a case by case basis, taking into account not only deeds and local land records, but the overall character of the land as well. *See United States v. 817 N.E. 29TH Drive, Wilton Manors, Fl.*, 175 F.3d 1304, 1308 (11th Cir. 1999).

Diaz contends that the four parcels should not be considered as one piece of property because they are four separate lots, were taxed separately, and were purchased for distinct and separate uses. (Def. Mot. at 7.) As discussed earlier, property subject to forfeiture under § 853(a) is defined by "the instruments and documents that created the defendant's interest in the property." *See Bieri*, 21 F.3d at 824. Therefore, the critical facts in this case are that Diaz purchased the four parcels of land together at a single time, that the sale and transfer of the parcels was recorded in a single instrument, and that the parcels are contiguous. *See id.* Even if Diaz views or treats the property as separate tracts, his subjective characterization of the property is irrelevant to what constitutes property for purposes of forfeiture under § 853(a).[5] *Id.*

As stated above, the Government has established the required nexus between the property owned by Diaz and the drug offense. Additionally, the instruments and documents that created Diaz's interest in the four Cotton parcels show that the parcels constitute a single piece of property. Therefore, § 853(a) requires the district court to forfeit the entire property. *Id.*

## B. **Excessive Punishment**

Diaz contends that the forfeiture of the four Cotton lots constitutes excessive punishment because it is disproportionate to the degree of his participation in the criminal conspiracy. (Def. Mot. at 9.) He argues that his co-conspirators only paid him $20,000 for his minor role in allowing the use of his property as a storage facility. *Id.* The Government responds that the punishment is not

---

[5]Even under the more liberal standards applied to civil forfeitures in the Second and Eleventh Circuits, the result would be the same under the facts of this case, notwithstanding that the lots were described separately in the deed and taxes appear to have been assessed separately for them. The property overall is commercial in nature with vehicles and containers found throughout the property. (*See* Government's App. 23-29). A metal frame of a building and a roofed carport are the only structures standing on the property. (Government's App. 29-30). Diaz bought the property from a single seller, showing that the parcels were held in common ownership even before Diaz bought them. (Government's App. 14-20). The property appears as one single piece of land, unseparated by walls and fences. (Government's App. 24, 26-28). There is only one gated entrance located on the property which provides access to all four parcels, and severing the portion of the property with the gated entrance on it would be impractical because there would be no access to the remaining lots as they currently exist. (Def. Exh. 1, 8).

excessive because the purchase price of the parcels was only $ 60,000, while Diaz could be fined up to $ 4,000,000 under 21 U.S.C. § 841(b)(1)(A) for his conviction. (Govt. Mot. at 6.)

A punitive forfeiture violates the Excessive Fines Clause of the Eighth Amendment if it is "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). In applying the grossly disproportionate analysis, the Court "must compare the amount of the forfeiture to the gravity of the defendant's offense." *Id.* at 336-37. In arriving at the disproportionate standard, the Supreme Court, in *Bajakajian*, gave great deference to the judgments of the legislature about the appropriate punishment for an offense. *See United States v. Wallace*, 389 F.3d 483, 485-86 (5th Cir. 2004) (citing *Bajakajian*, 524 U.S. at 335). As a result, courts consider statutory maximum fines as well as sentencing guidelines in order to determine the gravity of an offense. *See id.* However, statutory maximum fines or sentencing guidelines should only be used as guidance and not as tools for imposing the kind of strict proportionality that the Supreme Court expressly disavowed in *Bajakajian*. *Id.* at 486-87.

In this case, the forfeiture of the four Cotton parcels pursuant to § 853(a) constitutes punishment within the meaning of the excessive fines clause. *See Libretti v. United States*, 516 U.S. 29, 38-39 (1995). Whether this forfeiture was excessive requires the comparison of the gravity of Diaz's offense with the value of the forfeiture. *Bajakajian*, 524 U.S. at 336-37. The value of Diaz's property subject to forfeiture is $68,730. (Def. Exhs. 2-5). However, under 21 U.S.C. § 841(b)(1)(A), a fine of up to $4000,000 could be assessed against Diaz for his conviction. Diaz admits that even if he is convicted under 21 U.S.C. § 856, a maximum fine of $500,000 and an imprisonment term of up to 20 years could still be imposed on him. (Def. Mot. at 7-8.) Although the suggested maximum fines strongly suggest the gravity of his offense, they do not signify Diaz's minimum level of culpability.

8

The facts surrounding Diaz's offense are more probative of the seriousness of his participation in the crime. He admits that he participated in a cocaine trafficking conspiracy and "that he allowed two parcels of his property to be used to stage vehicles that were being used to move cocaine." (*See* Factual Resume, doc. 215.) He also admits that he was paid $20,000 for his role in the conspiracy. (Def. Mot. at 9.) Even though Diaz's drug offense may not have involved guns or violence, it was calculated, was committed for financial benefit, and facilitated access to dangerous and illegal substances.

The Court finds that the value of the criminal forfeiture is small compared to the statutory fines Diaz could face and to the gravity of his offense. Additionally, the value of the forfeiture is not excessive compared to the compensation Diaz received for his participation in the conspiracy. Because the amount of the forfeiture is not grossly disproportionate to the gravity of Diaz's offense, the Court concludes that the forfeiture of the four Cotton parcels under § 853(a) does not constitute excessive punishment in violation of the Eighth Amendment. *See Bajakajian*, 524 U.S. at 336-37.

**C.    Innocent Owner Defense**

Diaz contends that the four Cotton parcels should not be forfeited because his wife has an innocent owner community property interest in them. (Def. Mot. at 9.)

Federal Rule of Criminal Procedure 32.2(b)(2) provides:

> If the Court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture...directing the forfeiture of specific property without regard to any third party's interest in all or part of it. Determining whether a third party has such an interest must be deferred until any party files a claim in an ancillary proceeding under Rule 32.3(e).

Fed. R. Crim. P. 32.2(b)(2).

In this case, the Court has not yet entered a preliminary order of forfeiture. Therefore, no claim

by a third party with an interest, such as Diaz's wife, has yet been filed in an ancillary proceeding under Rule 32.3(e). Accordingly, this claim is premature.

### III.  CONCLUSION

The *Government's Motion for Recommendation of Forfeiture* should be **GRANTED**, and *Defendant's Motion for Denial of Forfeiture* should be **DENIED**.

**SO RECOMMENDED**, on this 18th day of September, 2009.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE